UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

IN THE MATTER OF APPLICATION
FOR SEARCH WARRANT – MOTION TO
QUASH SUBPOENA RELATED TO MISC.
06-30 (JAF)

Misc. No. 06-49 (JAF)

## MEMORANDUM ORDER

This case involves the United States' motion to quash subpoenas issued by the Puerto Rico Department of Justice (PRDOJ) against United States Attorney Humberto García ("USA García") and against Luis Fraticelli, Special Agent in Charge of the San Juan Field Office of the Federal Bureau of Investigation (FBI)("SAC Fraticelli"), seeking the name, rank, division, address, telephone number, and official pictures of the two FBI agents who allegedly pepper sprayed a journalist while executing a search warrant on February 10, 2006. The subpoena also sought USDOJ protocols related to the use of force and pepper spray.   A hearing was held the morning of Thursday, March 2, 2006, to discuss the jurisdictional question of whether the quash motion was properly filed in United States District Court.

### FACTS

On February 10, 2006, the FBI executed a search warrant, one of six issued by this court on February 9, 2006, at 444 De Diego Street, Río Piedras, Puerto Rico, pursuant to the investigation of a criminal enterprise.  Following standard practice and investigative protocol, the USDOJ cannot publicly release details surrounding the criminal

Misc. No. 06-49 (JAF)                                                    -2-

enterprise that motivated the search warrant.  However, the court, as
the issuing judicial authority, has obtained knowledge through the
sealed, supporting documents and the warrants' return that the
criminal plans were very specific, and if successful, could have
compromised the lives of state and federal officials, public and
private property, as well as the general public.

       During the warrant's execution, a handful of journalists eager
to obtain the news of the day slipped into a large group of
protesters and curious members of the general public who tried to
take advantage of an opportunity to cross a police line at 444 De
Diego Street, a residential condominium.  The federal agents guarding
the site's perimeter, their vehicles, and the fruit of the search –
in other words, executing their official duties –  eventually pepper
sprayed those who barged through the line against federal law in an
effort to insulate themselves from such interference.

       Journalist Normando Valentín Quintana was one of the individuals
who suffered the effects of pepper spray on February 10, 2006. He
subsequently requested that the PRDOJ file criminal charges against
the federal agents responsible for what the PRDOJ believes to be an
assault and battery.  To that end, PRDOJ issued subpoenas against
United States Attorney Humberto García ("USA García") and against
Luis Fraticelli, Special Agent in Charge of the San Juan Field Office
of the Federal Bureau of Investigation (FBI)("SAC Fraticelli") on
February 17, 2006, seeking the already-mentioned information.

Misc. No. 06-49 (JAF)                                                    -3-

PRDOJ's issuance of the subpoenas against federal officials has generated a great deal of local news coverage, which, coupled with the vocal protests against the searches themselves, has served to publicly cast federal institutions in a negative light.

USA García and SAC Fraticelli both work for the United States Department of Justice (USDOJ), however, and agency regulations forbid them, as USDOJ employees, from releasing the subpoenaed information, which is considered agency property.   The USDOJ regulations, 28 C.F.R. §§ 16.21 et seq., detail a specific procedure that PRDOJ must follow to obtain agency information.   While it is unnecessary to get into the details of that regulatory procedure, it merits repeating that by no stretch of the imagination does it involve directly asking USA García and SAC Fraticelli, who are  individual employees of the agency, to hand it over.

Forbidden from releasing the information by federal law, by the sensitive nature of the underlying domestic terrorism investigation, and by the fact that the subpoenaed information could compromise the personal security of the federal agents involved, yet faced with possible criminal contempt charges if they refused to respond to the subpoenas, García and Fraticelli filed a motion in this court to quash the subpoenas on February 28, 2006, arguing that federal jurisdiction was proper under 28 U.S.C. § 1442 (1994 & Supp. 2005). PRDOJ filed an opposition to the quash motion being heard in federal

Misc. No. 06-49 (JAF)                                                          -4-

court on March 2, 2006, and we held a hearing on the question later
that same day.

        Surprisingly, during the hearing, PRDOJ indicated that it was
actually evaluating other avenues through which to get the
information about the federal agents, and that it had no serious
intention of enforcing the challenged subpoenas, at least not at the
present time.  The Solicitor General of Puerto Rico, representing the
Attorney General, agreed that no enforcement action would take place
without giving the federal officials and this court ample notice.

<u>**DISCUSSION**</u>

        We consider PRDOJ to have effectively mooted, at least for now,
the jurisdictional question by stating that it does not have any
plans to enforce the subpoenas.  Although we therefore have no moment
to issue an order formally endorsing the United States' jurisdiction
argument in this case, we think it just as well that PRDOJ take a
different approach to this dispute, given the strength of the United
States' position, which we summarize briefly below.

        28 U.S.C. § 1442 (a)(1) states that a civil action or criminal
prosecution commenced against officers of a federal agency may be
removed to a United States District Court in the district where the
civil action or criminal prosecution is pending.  USA García and SAC
Fraticelli invoked § 1442 (a)(1) removal because they conceivably
face criminal contempt charges for refusing to respond to the

subpoenas, but PRDOJ argues that the removal is premature because no criminal contempt charges have yet been commenced.

Although the First Circuit has never addressed this issue, in Nationwide Investors v. Miller, 793 F.2d 1044 (9th Cir. 1986), the Ninth Circuit upheld the § 1442(a)(1) removal of a federal official's subpoena quash motion **even though he had not yet been charged with contempt for failure to respond.**  The federal officer's quash motion was ripe for removal even before the contempt charge materialized, the Ninth Circuit said, because it was "worse than an empty gesture" to require federal officers to disobey state court process in order to obtain a federal forum.  Id. at 1047.  According to the Miller court, **"[t]he form of the action is not controlling**; it is the state's power to subject federal officers to the state's process that § 1442(a)(1) curbs." Id.; See also Bosaw v. Nat'l Treas. Employee's Union, 887 F.Supp. 1199 (S.D.Ind. 1995) (adopting the Miller court's reasoning and holding that "[o]fficers have been sufficiently threatened with the state's coercive power to make removal appear proper.  For this Court to encourage or require federal officers to disobey a state court order before they can remove the dispute to federal court is not only overly formalistic, it is simply bad policy").

Miller's practical approach to § 1442(a)(1) ripeness is consistent with the Supreme Court's statement in Willingham v. Morgan, 395 U.S. 402, 406-7 (1969), that § 1442(a)(1) removal be

Misc. No. 06-49 (JAF)                                                    -6-

"broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." See also Arizona v. Maypenny, 451 U.S. 232, 241 (1981)(stating that § 1442(a)(1) was meant "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties").

Given PRDOJ's indication at the March 2 hearing that it now plans to explore more conventional avenues of obtaining information about the federal agents before bothering to enforce the drastic and controversial subpoenas at issue, one only wonders why PRDOJ ever bothered to subpoena the federal officials in the first place. It is patently obvious that it was either a poorly thought-out strategy now wisely abandoned, or, having seen how the local news media seized this story as the latest chapter in some sort of imagined antagonism between federal and local officials on the island, we speculate that the PRDOJ issued the subpoenas to embarrass federal institutions, including law enforcement, USDOJ, and this court.

If the latter is true, then this exercise is nothing else but a distorted and sad representation of what the justice system is. PRDOJ certainly has a duty to investigate whether federal agents committed state crimes when executing the February 10 search warrant, but PRDOJ should not take its discharge of that duty as an opportunity to issue publicity-stunt subpoenas without legal force that waste federal and local resources when the proper, legal

Misc. No. 06-49 (JAF)                                           -7-

procedure for requesting the information from USDOJ is crystal clear. Wasted government resources come at a cost.  It goes beyond monetary considerations and affects the reputation of law enforcement and the judiciary, both state and federal.   In executing the search warrant on February 10, the FBI sought to ensure the safety and welfare of this community, and in that regard federal and local officials at least theoretically share a common goal.  If local officials elect not to work towards that common goal with federal officials, then they should at the very least not undermine the delicate balance between the United States' sovereign immunity and legitimate state interests.

     By virtue of the foregoing, and subject to new developments inconsistent with the principles enunciated here, we will withhold action on the pending motion to quash.

          **IT IS SO ORDERED**.

     San Juan, Puerto Rico, this 3rd day of March, 2006.

                                   S/José Antonio Fusté
                                    JOSE ANTONIO FUSTE
                                   U. S. District Judge